IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE FELIX, individually and on behalf other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAVIS MORENO CONSTRUCTION, INC.,<br><br>Defendant. | CASE NO. CV F 07-0533 LJO GSA<br><br>**ORDER ON MOTION FOR CLASS CERTIFICATION**<br>(Doc. 26.)<br><br>**Scheduling Conference:**<br><br>Date: **October 9, 2008**<br>Time: **8:30 a.m.**<br>Dept.: **4 (LJO)** |

## INTRODUCTION

Plaintiff Mike Felix ("Mr. Felix") seeks conditional certification of a proposed class to pursue overtime wage and related claims against defendant Davis Moreno Construction, Inc. ("Davis Moreno"). Mr. Felix further seeks to provide notice of conditional certification of a proposed class to similarly situated carpenters subject to Davis Moreno's "practice and policy of nonpayment of wages." Davis Moreno contends that based on federal law that overtime accrues only in excess of 40 hours per week, Mr. Felix has no overtime and related claims to warrant conditional class certification. This Court considered Mr. Felix's motion for conditional class certification and notice on the record, and VACATES the September 15, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES conditional certification of and notice to Mr. Felix' proposed class.

1

# BACKGROUND

## The Parties

During 16 weeks spanning the summer and fall of 2006, Mr. Felix worked as a carpenter at Fresno and Merced County jobsites for Davis Moreno, a general contractor which constructs public works through competitive bid.[1] Mr. Felix alleges that Davis Moreno did no pay him and similarly situated carpenters overtime for: (1) start-of-the-day "rolling out" and end-of-the-day "rolling up"; and (2) work during interrupted lunches. As such, Mr. Felix pursues claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.[2], and similar California laws. To support his class certification and notice motion, Mr. Felix points to the deposition testimony of him and Davis Moreno superintendent Robert Roper ("Mr. Roper") and supervisor Mike Beers ("Mr. Beers").

## Rolling Out And Rolling Up

### *Mr. Felix' Deposition Testimony*

Mr. Felix testified that Davis Moreno's carpenters were organized in crews. Mr. Felix reported to an appointed job site early in the morning, and he and other carpenters started rolling out, that is, organizing supplies, unloading and preparing tools, unloading equipment from trucks, and receiving instructions. Mr. Felix claims that "carpenters were often not paid for this work because it was Defendant's policy and practice to pay Carpenters beginning at the appointed start time regardless of when they were actually at the jobsite and working prior to the start time."

Mr. Felix testified that at workday's end, he and similarly situated workers performed rolling up tasks, including loading tools and equipment on trucks or in proper storage locations. Mr. Felix claims that at some jobs, "they were not paid for this work because it was Defendant's policy and practice to pay them only up to the scheduled end of the work day." Mr. Felix further notes that "crews sometimes left the work site 15 to 20 minutes after the time they were no longer paid."

---

[1] Mr. Felix claims that he worked for Davis Moreno during June 2006 to October 2006. Davis Moreno's records reflect that Mr. Felix' employment commenced on the week ending July 21, 2006 and ended during the week of November 3, 2006.

[2] Unless otherwise noted, all further statutory references will be to the FLSA, Title 29 of the United States Code.

Mr. Felix contends that industry practice is for carpenters, related trades and sub-crafts to roll up and roll out during compensable time "because it is part of the work the construction workers are hired to perform."

### *Mr. Roper's Deposition Testimony*

Mr. Roper noted that carpenters use hand tools, power tools, hammers, drills, saws, sawzalls, generators, drill motors and rotor hammers. Carpenters also perform cement finishing to require use of trowels, floats, power trowels, leveling equipment, screed systems and other tools. Mr. Roper noted that time is required to unload and prepare the tools prior to the appointed starting time. Mr. Felix attributes Mr. Roper to state that the employer does not pay workers for time to unload and arrange personally-owned and company-owned tools and that workers must be prepared to work at the appointed starting time. Davis Moreno challenges such attribution[3] and points to Mr. Roper's testimony that the employer does not pay for the time during which a carpenter unloads his tools from his personal vehicle.[4] Mr. Roper noted that there is no roll-out time in that the employer pays for an eight-hour day with a 30-minute unpaid lunch. Mr. Roper testified that an employee needs to have tools ready at his starting time. Mr. Felix construes such testimony to the effect that Davis Moreno does not pay for start-of-the-day roll out time. Mr. Roper testified that roll up is on the clock prior to designated quitting time.

### *Mr. Beers' Deposition Testimony*

Mr. Beers is a Davis Moreno carpenter superintendent and field foreman who supervised Mr. Felix and fellow carpenters on at least one job. Mr. Beers noted that workers "show up early" – an estimated five to 10 minutes.[5]

### **Interrupted Lunches**

Mr. Felix and his fellow carpenters were scheduled for a 12 p.m. to 12:30 p.m. unpaid lunch. According to Mr. Felix, redi-mix concrete trucks "intermittently" arrived during the lunch period to

---

[3] Mr. Felix did not provide deposition transcripts to support his points. Davis Moreno did.

[4] Davis Moreno notes that it provides all tools although an employee may use his own tools. Davis Moreno points out that it is not obligated to pay an employee to walk from his car to the jobsite carrying his own tools. 29 U.S.C. § 254(a); 29 C.F.R. § 785.47; 29 C.F.R. § 790.7; *IBP, Inc. v. Alvarez*, 546 U.S. 21, 42, 126 S.Ct. 514 (2005).

[5] Davis Moreno notes that Mr. Beers did not testify that early arriving employees started to work prior to the appointed starting time.

require Mr. Felix and similarly situated workers to immediately "tend to pour the concrete" and interrupt their lunch period.

Mr. Beers noted that concrete pours and deliveries interrupted lunches to require some workers to work during the remainder of lunch periods. According to Mr. Beers, the worker would take the interrupted lunch time as a longer break later in the day.

**Time Sheets**

Mr. Roper testified that Davis Moreno workers performing carpentry are subject to the same time sheet process by which a worker keeps his time sheet during the week and at week's end turns it in to his superintendent or foreman for approval. Generally, the time sheets have rounds numbers for hours worked, for instance, eight hours with no hour fractions for a day.

**Breakdown Of Mr. Felix' 16-Week Employment**

To respond to Mr. Felix' above general description of his work, Davis Moreno focuses on Mr. Felix' deposition testimony and the following week-by-week breakdown of his employment.

*Weeks Ending July 21 and 28, 2006 And August 4, 2006 – Kerman Project*

Mr. Felix worked at the Kerman project for three weeks setting forms and pouring concrete. Each day, he arrived at the Kerman jobsite at 6 a.m., left at 2:30 p.m. and received generally a 30-minute lunch break. Mr. Felix claims that he was involved on concrete pours on three days at the Kerman project but identifies neither days when his lunch was interrupted nor lengths of interruptions.

Davis Moreno's records show that on the Kerman project, Mr. Felix worked 32 hours the week ending July 21, 2006, 42 hours (two hours overtime) the week ending July 28, 2006, and 36 hours the week ending August 4, 2006. Mr. Felix' time record shows only one concrete pour, which was during the week ending July 21, 2006. Davis Moreno notes that even if Mr. Felix' entire lunch was interrupted, the missed 30 minutes would not cause his work hours to reach 40 hours that week.

Mr. Felix identifies no concrete pours during the weeks ending July 28, 2008 and August 4, 2008. Davis Moreno notes that absent a concrete pour, Mr. Felix was properly compensated and received uninterrupted 30-minute lunch breaks.

/ / /

/ / /

4

*Weeks Ending July 28, 2006, August 4, 2006 And September 30, 2006*
*– Clovis Third Ed Project*

In his deposition, Mr. Felix testified that he worked at the Clovis Unified School District educational complex at Willow and International Avenues in Clovis ("Clovis Third Ed project") for two straight weeks and then off and on. Davis Moreno's records indicate that Mr. Felix worked at the Clovis Third Ed project for five days during the weeks ending July 28, 2006 and August 4, 2006 and one day during the week ending September 30, 2006. Mr. Felix performed work related to building forms for concrete, including chamfer work that involved placing a piece of wood onto a form to make a beveled corner and placement into concrete, setting wall panels, and building forms for "concrete diamonds." Mr. Felix was involved pouring concrete only one day at the Clovis Third Ed project.

Davis Moreno points to Mr. Felix' deposition testimony that Mr. Felix performed no unpaid roll up at the Clovis Third Ed project and that Mr. Felix left the project every day at 2:30 p.m. after an eight-hour shift.

On non-concrete days, Mr. Felix got his lunch at the Clovis Third Ed project. He claims that he did not get his lunch break only when he poured concrete at the Clovis Third Ed project.

Mr. Felix testified that his "on and off" work at the Clovis Third Ed project involved mainly clean up. For such work, Mr. Felix arrived at the job site at 7 a.m., left at 3:30 p.m., always had a 30-minute lunch break, and thus worked eight-hour days.

*Weeks Ending August 11, 18 And 25, 2006, September 1, 8, 15, 22 And 29, 2006*
*And October 6, 13 And 20, 2006 – Fresno City College*

Mr. Felix worked at Fresno City College job sites the weeks ending August 11, 18 and 25, 2006, September 1, 8, 15, 22 and 29, 2006, and October 6, 13 and 20, 2006. Mr. Felix worked at a jobsite near Ratcliffe Stadium for "about a month" and was involved mainly with sandblasting and pouring concrete. He worked from 6 a.m. to 2:30 p.m. and received a 30-40 minute lunch break.

Mr. Felix claims that his second Fresno City College jobsite was near the gym where he worked for "two months." Davis Moreno's records indicate he worked at the jobsite off and on from the week ending September 8, 2006 to the week ending October 20, 2006. Mr. Felix arrived at the gate at 6 a.m. each day and after the gate opened, he drove his vehicle in, parked it, and headed to the tool area. Mr.

Felix noted that for the most part, he got off work at 2:30 p.m.

Of the 11 weeks he worked at Fresno City College jobsites, Mr. Felix logged 40 hours for five weeks, 32 hours for four weeks, and 34 hours during the remaining weeks. Mr. Felix received a 30-minute lunch break, except during two days of concrete pours on which his lunch was 20 minutes. Davis Moreno notes that Mr. Felix does not tie the short lunch days to a particular week to demonstrate working more than 40 hours.

### *Week Ending August 18, 2006 – Firebaugh Job*

Davis Moreno records indicate that Mr. Felix worked at a Firebaugh jobsite two days during the week ending August 18, 2006. Mr. Felix was involved in building concrete forms. Mr. Felix worked an eight-hour day from 6 a.m. to 2:30 p.m. with a 30-minute lunch.

### *Weeks Ending August 25, 2006, September 1, 2006 And October 13, 2006 – Merced Jobs*

Davis Moreno records indicate that Mr. Felix worked on two jobs in Merced on about four days during August, September and October 2006. He worked eight-hour days and received his lunch on two days when he poured concrete.

### *Weeks Ending October 13, 20 And 27, 2006 And November 3, 2006 – Dunlap Job*

Mr. Felix worked at a Dunlap school jobsite where he set concrete forms and poured concrete and slurry. Each day during the month-long job, Mr. Felix arrived at work at 6 a.m., drove away in his vehicle at 2:30 p.m., and received a 30-minute lunch.

### *Jobs Summary*

Mr. Felix worked 60 days over 16 weeks on nine jobs for Davis Moreno. Davis Moreno notes that according to Mr. Felix' testimony, the Clovis Third Ed project "potentially shows that one week only he may not have received all overtime pay he claimed was due for work at the beginning of the day." Davis Moreno points out that Mr. Felix' testimony demonstrates that "at eight of the nine jobs he received all pay for hours he claimed to have worked." Davis Moreno disputes a FLSA violation in that many of Mr. Felix' weeks fell below the federal law 40-hour a week threshold. Davis Moreno further notes that Mr. Felix identified only six interrupted lunches during his 60 working days. Mr. Felix responds that the number of interrupted lunches is irrelevant in that "the question is what happened to Carpenters when the trucks arrived during lunch."

6

### Other Employees

Mr. Felix seeks to conditionally certify a class for "similarly situated carpenters" who worked in excess of 40 hours without overtime pay. Mr. Felix claims to have worked with up to six people and that two other people worked with him after 2:30 p.m. at times.[6]

Mr. Felix identifies himself as a concrete finisher but admitted there are "all kinds" of other carpenters with whom he did not work.

### Mr. Felix' Claims

Mr. Felix proceeds on his original complaint ("complaint"), filed April 5, 2007, to allege that Davis Moreno "required, suffered, or permitted Plaintiff, and other similarly situated carpenters, to work hours in excess of 40 per week without overtime compensation" to violate the FLSA and similar California laws. The complaint alleges a (first) cause of action for violation of section 207(a) (FLSA overtime) and four other causes of action for violation of California laws.

### DISCUSSION

### Conditional Certification Of Putative Class

*Similarly Situated Employees*

The FLSA provides for overtime pay "for a workweek longer than forty hours." 29 U.S.C. § 207(a). Section 216(b) permits a section 207 overtime action to be brought "by any one or more employees for and in behalf of themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

A district court has discretion to determine whether a collective action is appropriate. *Leuthold v. Destination AM, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989). "[T]he

---

[6] Davis Moreno notes that Mr. Felix has neither identified his coworkers nor filed coworkers' declarations.

court must evaluate whether the proposed lead plaintiffs and the proposed collective action group are 'similarly situated' for purposes of §216(b). Plaintiffs bear the burden of making this showing." *Leuthold*, 224 F.R.D. at 467.

The FLSA does not define "similarly situated." Fellow district courts use a two-tier majority approach to determine whether there are potential plaintiffs who are similarly situated. *Leuthold*, 224 F.R.D. at 467; *Williams v. Trendwest Resorts, Inc.*, 2006 WL 3690686, *4 (D. Nev. 2006).

The first tier is the "notice stage." A court must decide "based primarily on the pleadings and affidavits submitted by the parties, whether the potential class should be given notice of the action." *Leuthold*, 224 F.R.D. at 468; *see Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001); *Williams*, 2006 WL 3990686, *4. "Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification." *Leuthold*, 224 F.R.D. at 468; *see Bonilla v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129, 1139, n. 6 (D. Nev. 1999), *Williams*, 2006 WL 3990686, *4.

The evidence must show there is "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Bonilla*, 61 F.Supp.2d at 1139, n. 6; *see Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934, 122 S.Ct. 2614 (2002) (court requires "the putative class members were together the victims of a single decision, policy or plan."); *Realite v. Ark Rest. Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998) (plaintiffs can show that potential class members are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs are victims of a common policy or plan that violated the law.")

"However, unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003); *see Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983). A plaintiff cannot proceed in a collective action if the action relates to other "specific circumstances personal to the plaintiff" rather than a generally applicable policy or practice. *Bonilla*, 61 F.Supp.2d at 1139, n. 6 (internal quotes omitted.) A "plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions, because

8

without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Barron v. Henry County School System*, 242 F.Supp.2d 1096, 1104 (M.D. Ala. 2003).

The notice stage requires further court action:

> At this notice stage a district court also determines whether notice of the action should be given to potential class members. If the court determines there are potential plaintiffs, the court will conditionally certify a class. Putative class members are then given notice and the opportunity to opt-in. After discovery is largely complete the court makes a second, factual determination on the "similarly situated" question; this is the second tier. If the court determines that the claimants are not similar[ly] situated, the class is decertified and the opt-in plaintiffs are dismissed without prejudice. But if the court finds that claimants are similarly situated, the representative action is allowed to proceed as a collective action. *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213 (5th Cir.1995).

*Williams*, 2006 WL 3990686, *4; *see Leuthold*, 224 F.R.D. at 468 ("Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class.")

At this notice stage, this Court must determine whether based on the record, similarly situated plaintiffs exist. To satisfy the similarly situated requirement, Mr. Felix needs to show that his position is "similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217.

Mr. Felix at this first stage encourages this Court to certify the class conditionally "for limited purpose of notice and discovery purposes" pursuant to section 216(b). Mr. Felix claims the absence of dispute that:

1. Davis Moreno treats all of its carpentry employees "in the same manner";
2. Davis Moreno requires but does not compensate carpentry employees to be ready to work with tools unloaded and prepared at the prescribed starting time;
3. Concrete pouring and deliveries interrupt lunches of carpenters and others performing concrete work; and
4. Employees whose lunches are interrupted are not given a new lunch period but are allowed to take missed lunch time as a break later in the day.

Mr. Felix further notes that workers are generally paid for eight hours per day and assigned 40-hour work weeks. Mr. Felix's theory is that since roll out and roll up time and interrupted lunches are compensable, Mr. Felix is "similarly situated to all the other construction workers performing any portion of the

9

carpentry craft." Mr. Felix argues that he and his fellow carpenters "were similarly situated in that they were all construction workers performing carpentry work subject to the same practice and policy which resulted in non-payment of overtime." Mr. Felix concludes there is "a clear factual nexus" to bind him and potential class members as "victims of a particular alleged policy or practice."

Mr. Felix proposes to define the proposed class as:

> All construction workers performing any manner of carpentry and worked for Davis Moreno Construction, Inc. for the time period from April 5, 2004 to the present and were not paid wages and overtime pursuant to the Fair Labor Standards Act.

Davis Moreno responds that Mr. Felix has not met his minimal substantially similar burden in the absence of showing that his situation results from "a single decision, policy or plan." Davis Moreno notes that of his nine Davis Moreno jobsites, Mr. Felix identified only one where he allegedly was not paid for work at the beginning of the day and only one where he worked after appointed hours. Davis Moreno describes these incidents as "isolated and singular" so as not to arise from a pattern of FLSA violations emanating from a single decision, policy or plan.

Davis Moreno notes that Mr. Felix worked less than 40 hours nine of the his 16 weeks of Davis Moreno employment. Davis Moreno points to an absence of evidence of 40-hour work weeks where a potential class member was not paid for work at the beginning or end of the appointed workday, including periods before or after Mr. Felix' limited employment.

Davis Moreno further points to Mr. Felix' identification of only six interrupted lunches and the absence of evidence of the duration of interrupted lunches of other potential class members to exceed section 207(a)'s 40-hour limit.

This Court agrees with Davis Moreno that Mr. Felix fails to meet the lenient standard to warrant conditional class certification in the absence of a decision, policy or plan to require more than 40-hour work weeks without pay. This Court is troubled that although this action has been pending for 16 months, Mr. Felix has offered neither evidence nor a declaration of another carpenter to support his overtime claims. Most notably, Mr. Felix attempts to extrapolate a Davis Moreno policy from Mr. Roper's testimony, the transcript of which Mr. Felix failed to provide. Mr. Felix relies on concocted generalities and distorted deposition testimony to spin his claims. Mr. Moreno's reliance on his overly general allegations is insufficient considering his deviating deposition testimony. Mr. Moreno fails to

offer specific evidence of a nexus to bind him and potential class members, especially given the few other carpenters with whom he worked directly. Mr. Felix' "evidence" amounts to no more than unsupported assertions of FLSA violations. The gist of this action is Mr. Felix' specific circumstances, not those of similarly situated carpenters. Under the present circumstances, conditional class certification would promote an opportunity for abuse, not judicial economy.

### **Notice**

Mr. Felix seeks to send his proposed notice of this action to potential class plaintiffs of their right to "opt in" this action and to require Davis Moreno to provide Mr. Felix the names and last known addresses "for all individuals covered by the class description."

"Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-LaRoche*, 493 U.S. at 172, 110 S.Ct. 482. When a collective action is conditionally certified, a district court may permit discovery into the names and addresses of employees who fall into the class description. *See Hoffmann-LaRoche*, 493 U.S. at 170, 110 S.Ct. 482; *Williams*, 2006 WL 3990686, *4; *see also Vaszlavik v. Storage Technology Corp.*, 175 F.R.D. 672, 681-682 (D. Colo. 1997) (once a collective action is certified, plaintiffs are entitled to discover the names and addresses of putative class members).

As to form of notice, the U.S. Supreme Court has explained that by "monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." *Hoffman-LaRoche*, 493 U.S. at 172, 110 S.Ct. 482.

In the absence of conditional class certification, notice is immaterial as is Mr. Felix' request for names and addresses of his overly broad proposed class. As such, this Court need not address Mr. Felix' proposed notice and Davis Moreno's criticisms of it.

### **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES conditional certification of and notice to Mr. Felix's proposed class and Mr. Felix' request for names and addresses of other Davis Moreno employees;

2. SETS a scheduling conference for October 9, 2008 at 8:30 a.m. in Department 4 (LJO) to set discovery, motion and trial dates for Mr. Felix' individual claims. The parties are encouraged to appear at the conference by telephone by arranging a one-line conference call and adding the Court at (559) 498-5680;

3. ORDERS the parties, no later than October 2, 2008 to file a joint scheduling report.

IT IS SO ORDERED.

**Dated: September 3, 2008**                /s/ Lawrence J. O'Neill
                                             UNITED STATES DISTRICT JUDGE